# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**ROBERT HILL**                                                                                                          **PLAINTIFF**

v.                                                                                                              No. 5:22-cv-171-BJB

**PHOENIX PAPER WICKLIFFE LLC**                                                          **DEFENDANT**

\*\*\*

## MEMORANDUM OPINION & ORDER

Robert Hill tripped and hurt his ankle while working at Phoenix Paper's Wickliffe mill. So he sued Phoenix for negligence. Phoenix moved for summary judgment, arguing that Kentucky law makes workers' compensation—not the tort system—the exclusive remedy for injured workers like Hill. The Court agrees and grants Phoenix's motion.

### I. The Undisputed Record

Phoenix Paper operates a mill in Wickliffe, Kentucky. To make paper, Phoenix requires "regular and recurrent" deliveries of raw material—chiefly lumber. Brown Affidavit (DN 23-3) ¶ 7; Hill Depo. (DN 23-2) at 52:9–12. It contracted with the Kevin B. Smith logging company to deliver that wood. Brown Affidavit ¶ 8. The Phoenix-Smith contract stated that Smith was an "independent contractor providing services" to Phoenix and that Smith's employees were not to "be deemed" Phoenix's employees "for any purpose." Transportation Services Agreement (DN 28-3) ¶¶ 4, 13(h). The contract also required Smith to maintain workers' compensation insurance, which it did. *Id.* ¶ 7; Hill Depo. at 21:12–14. Phoenix, for its part, had its own workers' compensation policy covering its own employees as well as those of its subcontractors. Brown Affidavit ¶ 9.

Robert Hill drove trucks for Smith's logging outfit, which assigned Hill to deliver lumber to the Wickliffe mill. Hill Depo. at 21:4–5; 52:3–8. Hill lived near the mill, served as Smith's only Kentucky-based driver, and often delivered wood to the mill. *Id.* at 52:3–12. Twice, while making those deliveries, Hill twisted his ankle when he stepped in a hole in the pavement in the mill's parking lot. Brown Affidavit ¶ 4; Summary Judgment Br. (DN 23-1) at 1–2; Summary Judgment Response (DN 27) at 1–2. Those missteps injured Hill badly enough that he required surgery to repair his ankle. Hill Depo. at 66:3–4; Summary Judgment Br. at 3. Despite his awareness of both Phoenix's and Smith's workers' compensation policies, Hill never filed a claim. Hill Depo. at 21:6–8.

1

Instead, he sued Phoenix in Ballard (County) Circuit Court, arguing that Phoenix negligently failed to mitigate the "dangerous condition" created by the pockmarked paper-mill pavement. Complaint (DN 1-1) at 2. Phoenix removed the case (DN 1) and quickly filed this motion for summary judgment. According to Phoenix, Kentucky law makes workers' compensation the "exclusive remedy" for injured workers like Hill—rendering Phoenix immune from his tort suit. Answer (DN 1-2) at 2.

## II.  The Kentucky Workers' Compensation Act Bars Hill's Tort Suit

The Kentucky Workers' Compensation Act governs most workplace injuries in the Commonwealth. The KWCA requires employers to maintain workers' compensation insurance to cover employees who've been injured on the job—regardless of fault. *Phil Hollenbach Co. v. Hollenbach*, 204 S.W. 152, 156 (Ky. 1918). The legislative scheme pairs no-fault coverage with remedial exclusivity: As long as an "employer" complies with its obligation to "secur[e] payment of compensation" through insurance, the employer's liability "shall be exclusive and in place of all other liability … to the employee." K.R.S. § 342.690(1). This match of burden and benefit "lie[s] at the heart of the trade-off built into any workers' compensation system." *Black v. Dixie Consumer Products, Co.*, 835 F.3d 579, 586 (6th Cir. 2016).

The KWCA's remedial exclusivity extends beyond the employee's direct employer to include outsourcing and contracting arrangements. *See Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 205–06 (Ky. 2009). Specifically, when one firm (dubbed the "contractor," K.R.S. § 342.610(2)) engages another firm (the "subcontractor," *id.*) to perform a job or service that "is a regular or recurrent part" of the contractor's work, the subcontractor's remedial exclusivity extends "up the ladder" to shield the contractor from tort liability as well, *see* § 342.690(1); *Reichwein v. Jackson Purchase Energy Co.*, 397 S.W.3d 413, 417 (Ky. Ct. App. 2012). The KWCA accomplishes this extension by defining a "contractor" under § 342.610(2) as an "employer" under § 342.690(1). So contractors that carry workers' compensation coverage and benefit indirectly from the labors of others, just like employers or "subcontractors" that benefit directly, enjoy "exclusive" protection "in place of all other liability" from claims asserted outside the workers' compensation system.

The effect here is to route any claim Hill may have against Smith (the subcontractor) *or* Phoenix (the contractor) into the exclusive workers' compensation system. The KWCA treats both as "employers" and extends the immunity it provides Smith "up the ladder" to Phoenix so long as Phoenix both carried a workers' compensation policy and hired Smith to perform a "regular or recurrent" aspect of Phoenix's work.

Does Phoenix check each of those boxes?

As to the first, Phoenix submitted an affidavit stating that, on the dates of Hill's injuries, Phoenix had an effective workers' compensation policy "for its employees and the employees of its subcontractors." Brown Affidavit ¶ 9. Hill neither disputes that statement's accuracy nor argues that Phoenix's policy was somehow deficient. *See Marquez-Warner v. Campus Crest at Louisville*, No. 3:15-cv-172, 2018 WL 1522356, at *2 (W.D. Ky. Mar. 28, 2018) (accepting workers' compensation coverage as undisputed despite lack of official Department of Workers' Claims certificate in the record); *Correct Care Sol'ns, LLC v. Tigue*, Nos. 2016-CA-1576/2016-CA-1684, 2018 WL 6600236, at *2 (Ky. Ct. App. Dec. 14, 2018) (similar).

As to the second, Hill again doesn't dispute that his lumber deliveries were a "regular or recurrent part" of Phoenix's business. *See* Brown Affidavit ¶ 8; Hill Depo. at 52:9–12. Sixth Circuit precedent strongly suggests he *couldn't* dispute this even if he tried: "the transportation and delivery of raw paper materials," that court has held, is a regular and recurrent aspect of a paper factory's business. *See Black*, 835 F.3d 579, 584–86 (6th Cir. 2016). And more generally, state and federal courts throughout the Commonwealth have held that shipments of inputs and inventory up and down the supply chain are a regular and recurrent aspect of a merchant's or producer's business. *See Houser v. Kohl's Inc.*, No. 5:22-cv-108, 2023 WL 1072008, at *3–4 (W.D. Ky. Jan. 27, 2023) (collecting cases).

The undisputed record therefore indicates that Phoenix both "secured payment of compensation" and hired Hill—via Smith Trucking—to perform a "regular or recurrent" aspect of its business. So the KWCA immunizes Phoenix from the tort claims Hill attempts to assert in this lawsuit.

Hill's sole response argues that Phoenix and Smith contracted around the KWCA's exclusive-remedy provision. The contract defines Smith as "an independent contractor" of Phoenix. *See* Response at 2; Transportation Services Agreement ¶ 13(h). And it specifies that a Smith employee, like Hill, could not "be deemed an employee … of [Phoenix] for any purpose." Response at 4; Transportation Services Agreement ¶ 4. According to Hill, because the contract defines Smith as an "independent contractor," Smith can't be a "subcontractor" under the KWCA. And because Smith can't be a "subcontractor," the argument runs, Phoenix "cannot be either an employer or contractor" supplied with remedial exclusivity under the KWCA. Response at 1.

This response fails for several reasons.

*First*, the independent-contractor relationship between Smith and Phoenix is entirely consistent with the contractor/subcontractor arrangement contemplated by the KWCA and discussed above. Phoenix's agreement to deal with Smith as an independent contractor—as opposed to trading on some other non-contractual basis— fits with a statutory scheme designed for contractors and subcontractors. Contrary

3

to Hill's suggestion, the portion of the contract describing Smith as an independent contract makes it *easier*, not harder, to apply the KWCA to this set of facts.

*Second*, that Smith and Phoenix specified that Hill wasn't a Phoenix employee is irrelevant to whether Phoenix is a "contractor" under the statute. Given the up-the-ladder scheme discussed above, the KWCA's workers' compensation system doesn't depend on deeming *Hill* an employee; it suffices that the statute deems *Phoenix* an employer. *See* §§ 342.610(2), 342.690(1).

*Third*, courts throughout the Commonwealth have rejected Hill's argument and variants of it. "[A]ny express contractual provision describing [a subcontractor] as an 'independent contractor' has no bearing on whether" the contracting firm is "a contracto[r] within the meaning of § 342.610(2)." *Black v. Dixie Consumer Products Co.*, 516 F. App'x 412, 415 (6th Cir. 2013). The same applies to Smith and Phoenix. And as to Hill, "an injured worker's status as an independent contractor is irrelevant to the 'up the ladder' defense." *Settles v. Wal-Mart Stores, Inc.*, No. 14-64, 2015 WL 2152907, at *4 (E.D. Ky. May 7, 2015). The terms used in a private contract, Kentucky courts have recognized, don't necessarily control the statutory scheme. "Many forms of oral and written agreements," according to the Kentucky Supreme Court, "have been used to create the shadow of [an] independent contractor." *Brewer v. Millich*, 276 S.W.2d 12, 15 (Ky. 1955). Yet a reviewing court "should look to the substance" of the relationship "rather than the shadow." *Id.* Given that instruction, the Sixth Circuit has noted that "the relevant inquiry under the KWCA is not whether the injured worker is an employee or independent contractor." *Black*, 516 F. App'x at 415. Rather, the question is "whether 'the task the independent contractor is hired to perform' is a 'regular or recurrent part of the work of the trade, business, occupation, or profession' of the premises owner." *Id.* (quoting *General Electric Co. v. Cain*, 236 S.W.3d 579, 605 (Ky. 2007)).

The substantive relationship between Phoenix, Smith, and Hill fits comfortably within this statutory text and doctrinal precedent. The KWCA treats Phoenix and Smith as contractor and subcontractor, respectively, both of whom enjoy the remedial exclusivity of an "employer." The parties' contractual labels, which are in fact consistent with this statutory taxonomy, wouldn't override it even if they weren't. *See, e.g.*, *Black*, 516 F. App'x at 415. So Hill's argument fails either way you look at it.

**ORDER**

The Court grants Phoenix Paper Wickliffe LLC's motion for summary judgment, DN 23, and will enter final judgment in its favor in a subsequent order, *see* FED. R. CIV. P. 58.